(70 Misc. Rep. 288.)

### In re RABINOVITCH.

(Supreme Court, Special Term, New York County. January, 1911.)

1. INSANE PERSONS (§ 33*)—INCOMPETENTS—APPOINTMENT OF COMMISSION.
    Where there is no proof that an alleged incompetent has any property that a committee appointed by the court could take possession of, a petition for the appointment of a committee of his property will be denied.
    [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 44–50; Dec. Dig. § 33.*]

2. INSANE PERSONS (§ 7*)—INCOMPETENTS—APPOINTMENT OF COMMITTEE.
    Where an alleged incompetent is confined on a criminal charge, the court will neither appoint a committee of his person nor a commission in lunacy.
    [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 15; Dec. Dig. § 7.*]

Application of Louise G. Rabinovitch for the appointment of a committee for Joseph G. Robin, an alleged incompetent. Petition denied.

William Travers Jerome, for petitioner.

GOFF, J. Louise G. Rabinovitch by petition prays the court to adjudge Joseph G. Robin, her brother, a person incompetent to manage himself or his affairs, that a commission in lunacy issue, and that a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

committee of his person and property be appointed. The jurisdiction of the Supreme Court extends to the custody of the person and the care of the property of a person incompetent to manage himself or his affairs in consequence of lunacy, etc. (Code Civ. Proc. § 2320), and it must preserve his property from waste or destruction, and out of the proceeds thereof must provide for the payment of his debts and for his safe-keeping and maintenance (Id. § 2321). To warrant the court in exercising its jurisdiction in this proceeding two subjects must be present and within its control—person and property.

Considering these subjects in their inverse order, recourse must be had to the petition to ascertain what property there is to preserve from waste and to administer for the benefit and interest of the alleged incompetent person. The petitioner alleges on information and belief that Robin has for many years been engaged in the management of certain named companies, and other companies and business enterprises to her unknown; that his financial interests are very large; that he is the owner of a large amount of stocks, bonds, and securities of these companies; that many of the securities are in the possession of banks and various financial institutions as collateral security for the payment of notes; and that the estimated value is very considerable, amounting to at least $50,000. She states that, though she has been in frequent and intimate personal communication with him, "she has not at any time been in a position to know of her own knowledge, or through information derived from others, except in a very vague and indefinite way, of [his] particular business interests and relations." The sources of her knowledge and the grounds of her belief are statements made to her by persons intimately connected with his affairs, among others, Mrs. Dorland, his private secretary, and Mr. Frederick K. Morris, his business associate. These are the only persons named. There is no affidavit from either, nor is there any explanation concerning their whereabouts or their silence.

Of the stocks, bonds, or securities there is no description of title, denomination, or value, or of the banks or financial institutions in which they are alleged to be deposited; nor is there any description of the business or financial interests, their extent, location, or value, which would lead to their identification. There is not in this petition the slightest proof that Robin is possessed of or entitled to any property of any kind that a committee appointed by this court could take possession of, manage, and apply to his maintenance. Such a committee is required by law to give security as a prerequisite before taking possession of the incompetent's property. If there be no property, security cannot be required, and, if it be not given, the duties cannot be performed. In such a case the law will not perform an idle and futile ceremony. It is also alleged by the petitioner on information and belief that a large amount of stocks and bonds of the estimated value of upward of $50,000 was unlawfully taken by one Stumpf, and by Gifford and Kilburn; but the same infirmity of vagueness and indefiniteness characteristic of the preceding allegations attaches to this and deprives it of any probative value. Since there is no proof of any property, there cannot be in this proceeding the exercise of jurisdiction over that which does not exist.

The law, however, does not close all doors for relief.  It humanely furnishes means whereby a poor or indigent lunatic may be cared for and maintained at the expense of the state.  To accomplish this the insanity law (Consol. Laws, c. 27, art. 4, § 80) provides that "a person alleged to be insane and who is not in confinement on a criminal charge may be committed to an institution," etc.  The occasion for this law is obvious, and it cannot for a moment be considered that the Legislature intended to discriminate against the poor lunatic.  If it be ordained that a poor lunatic shall not be taken from confinement on a criminal charge and placed in a charitable institution, on principle the same rule should apply to an alleged lunatic who, it is claimed, is not poor and has property out of which he can be maintained through a committee.  In the exercise of that discretion, vested in a justice of this court by the use of its chancery powers in relation to the guardianship of the insane, I inspected and took judicial notice of the public records of the court of criminal jurisdiction in this county, and find that Robin, in whose behalf the petition is made, is actually confined under an indictment charging him with felony.  Where there is no proof of the existence of property, it would, in my opinion, be unseemly and improper to appoint a commission in lunacy or a committee of the person while he is in the custody of the people on a criminal charge.  It might lead, not only to confusion, but to possible conflict of authority, and thereby tend to impair respect for and confidence in the law and its impartiality.  If during confinement Robin's sanity be questioned, the criminal law furnishes ample means by which it can be determined in an orderly and proper procedure, and the authorities charged with the enforcement of that law must be presumed to apply its provisions with prudence and justice.

Petition denied.